AARON KIMBALL *vs.* JOHN H. LE PERT & Trustee.

The defendant, who lived in Texas, deposited acceptances with L. F. & Co. to be collected and distributed among certain of his creditors, according to the terms of a settlement made with them; L. F. & Co. failed and went into insolvency before executing the trust, and F., one of the firm, continued to act as trustee for the defendant; L. F. & Co. held a note against the defendant which was not included in the settlement, and which, after their insolvency, F. purchased from one to whom it previously had been negotiated by them; one of the creditors of the defendant afterwards refused to assent to the settlement, and the defendant directed L. F. & Co., by letter, to apply upon this note the amount which otherwise would have been paid to the dissenting creditor; F. subsequently delivered over all the funds which had been collected by him, and the uncollected acceptances, to E., who had been appointed by the other creditors to receive the same in discharge of their several claims, taking back from E. an agreement for the payment to him of the amount mentioned in the defendant's letter, when the acceptances should be collected; the acceptances were afterwards collected, and another creditor brought this action against the defendant, summoning E as trustee, and F. was admitted as a party to prosecute his claim to the sum specified in E.'s agreement. *Held,* that F. was entitled to judgment for the funds claimed by him.

CONTRACT. The defendant was defaulted, and the only question was whether Hiram Emerson, the trustee, should be charged for certain funds in his hands claimed by George A. Fiske, the claimant, who was admitted under the statute as a party to the suit. The following facts were agreed in the superior court.

In July 1857 the defendant, a merchant residing in Texas, made a settlement with his creditors in Boston, by which they agreed to accept their respective proportions of the proceeds of certain acceptances deposited by him with Loring, Fiske & Co., a firm of which the claimant was a member, in full of their claims against him. In the following September, Loring, Fiske & Co. failed, and subsequently dissolved their partnership and went into insolvency, and each partner obtained his discharge; and the claimant retained the acceptances deposited by the defend-

ant, for the execution of the trust undertaken by his firm, and collected a portion thereof. Before the failure of Loring, Fiske & Co., they held a note against the defendant which was not included in the settlement made in July, and which they negotiated to Oliver Ames & Sons, who afterwards, in March 1858 sold it to the claimant. On the 18th of May 1858 the defendant addressed to Loring, Fiske & Co. a letter, as follows:

"Gentlemen: On the 10th July 1857 I made a settlement with Mr. W. Montgomery, as agent for my Boston creditors, by paying him J. C. Shaw's drafts on Messrs. Powell & Ruthven of this city. All my paper was delivered to me by Mr. Montgomery, except two notes due Messrs. Parsons, Cutler & Co., who authorized him by letter to settle their claim against me, amounting to $1303.10, including interest to that date. Montgomery gave me a receipt against the notes (a copy of which I inclose). Since then, Montgomery and myself have written to the house to return the notes. They have failed to do so, up to the present time, which has caused the forfeiture of their contract with me. I do not know who controls the drafts, but you do, I suppose. You are hereby authorized to receive the *pro rata* amount coming to them (or was to come), and place the same to credit of my note in your favor that was not included in said settlement. You will also please advise me of the amount they have received, and have it credited on my notes in their favor."

Parsons, Cutler & Co. were among the creditors of the defendant included in his settlement, but they subsequently refused to assent to the arrangement. On the 26th of July 1858 the claimant, at the request of the other creditors of the defendant, delivered to Emerson, the trustee, the sum of $2224.36 in money, collected by him upon the above trust, and the remainder of the acceptances in his hands, taking back a receipt and agreement, as follows:

"Boston, July 26th 1858. Received of George A. Fiske twenty two hundred and twenty four 36-100 dollars in cash, and five of Powell & Ruthven's acceptances, amounting to thirty one hundred and forty four 8-100 dollars ($3144.08), in

full settlement of the claims of Dana, Farrar & Hyde; Plymp-ton, Stevenson & Co.; Sweetser, Gookin & Co.; Israel Nash & Co.; Emerson, Cochrane & Co.; Greenough, Cook & Co.; Converse, Harding & Co.; and the balance due Parsons, Cutler & Co. ($550.54); against J. H. Le Pert, of Richmond, Texas, the above having been left with Loring, Fiske & Co. for collection by the above creditors of J. H. Le Pert. Hiram Emerson Witness, William Montgomery."

" Boston, July 26th 1858. Having received of George A. Fiske sundry acceptances of Powell & Ruthven, Galveston, Texas, amounting to thirty one hundred and forty four 8-100 dollars ($3144.08), I hereby agree, on payment of said acceptances, to pay George A. Fiske, or his order, the sum of five hundred and fifty 54-100 dollars ($550.54), that amount being a balance due Parsons, Cutler & Co., from the above acceptances, on account of J. H. Le Pert, and by said Le Pert ordered to be paid to said Loring, Fiske & Co., as per said Le Pert's letter to Loring, Fiske & Co., dated at Galveston, May 18 1858. Hiram Emerson. Witness, William Montgomery."

Emerson collected all the acceptances, and paid the various creditors named in the receipt, except Parsons, Cutler & Co., and had remaining in his hands on the 2d of February 1859, the time of the service of the process upon him, the sum of $640.54.

Upon these facts *Vose*, J. ordered judgment for the claimant for $550.54, and interest from the date of the writ; and that the trustee be charged for the balance in his hands; and the plaintiff appealed to this court.

*S. Wells & J. D. Bryant*, for the plaintiff.

*T. K. Lothrop*, for the claimant.

CHAPMAN, J. On the 18th of May 1858, when Le Pert wrote the letter to Loring, Fiske & Co., the firm had been dissolved for several months, having gone into insolvency. But the letter related to a matter in which they had undertaken to act as trustees for Le Pert and his creditors, and the funds left in their hands under that trust would not pass to their assignee in insolvency. He informed them that the debt of Parsons, Cutler &

Co. had been otherwise provided for; and, as to the dividend which was due to that firm out of the trust property, he directs them to " place the same to the credit of my note in your favor that was not included in said settlement." The amount was $550.54, and the letter referred to a debt of $1192.85, which he had contracted for goods sold by Loring, Fiske & Co. to him after the funds were placed in their hands.

The letter above referred to having been received by Fiske, one of the persons to whom it was addressed, it became his duty to obey its instructions, and, after the drafts that had been left with the firm should be collected, to apply the portion that was orig-ally set apart for Parsons, Cutler & Co. towards the discharge of the debt indicated. It is immaterial that the notes had, prior to that time, been transferred by Loring, Fiske & Co. to O. Ames & Sons, and by them to Fiske. The reasonable con-struction of the letter is, that it directs the appropriation of the money to pay that debt, in whose hands soever it may be. The fact that Fiske owned the notes facilitated his compliance with the request of the writer.

On the 26th of July following, Fiske, at the request of the creditors interested, placed the trust funds in the hands of Emer-son, the trustee in this action, taking a receipt and agreement to himself personally. The receipt states the purpose for which the funds were deposited in the hands of Emerson. The agree-ment binds Emerson to pay the $550.54 to Fiske as soon as it should be collected, to be applied according to Le Pert's direc-tion in the letter of May 18. The money was thus appropriated by Fiske to the payment of his notes. The transaction was not of such a character as to require all the members of the firm to unite in it, or even to be informed in regard to it. The act of one would be the act of all, in the mere collection and payment of money in performance of a trust which they had undertaken. And the transaction was valid as against subsequent attaching creditors; for it was a mere appropriation of the $550.54 towards the payment of a debt, in respect to which no fraud or other illegality is suggested. The claimant is therefore entitled to the money.                                        *Exceptions overruled.*